# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FRANCIS M. GANISZEWSKI,

      Plaintiff,

      v.

LLOYD J. AUSTIN III, et al.,

      Defendants.

Civil No. 23-cv-02195-BAH

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Francis M. Ganiszewski ("Ganiszewski" or "Plaintiff"), brought suit against Lloyd J. Austin III, Secretary of Defense; Carlos Del Toro, Secretary of the Navy; and the Physical Disability Board of Review ("Defendants") alleging violations of the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"). ECF 1. Pending before the Court is Defendants' motion to dismiss the complaint. ECF 23. Ganiszewski filed an opposition, ECF 29, and Defendants filed a reply, ECF 30.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

I.    **BACKGROUND**[2]

Ganiszewski "served honorably in the United States Navy for over seven years, from April 24, 2000, to October 9, 2007." ECF 1, at 10. He received numerous commendations for his exemplary service and rose to the rank of Petty Officer Second Class. *Id.* He served both domestically and in foreign deployment, during which Ganiszewski alleges he was "subjected to repeated and continuous physical and mental abuse at the hands of his fellow sailors – and supervisors," and his "mental state deteriorated . . . resulting in a diagnosis of Bipolar Disorder." *Id.* at 11. After his marriage dissolved in 2003, his condition worsened and he "began experiencing auditory and visual hallucinations." *Id.* He was ultimately hospitalized for his condition and placed on several medications to treat it. *Id.*

On April 20, 2017, Ganiszewski's conditions led to an evaluation of his ability to continue serving. *Id.* at 13. The process for this evaluation is described in the complaint and in more detail below. First, Plaintiff was evaluated by the Medical Board. *Id.* "In its report, the Medical Board found that he experienced symptoms of difficulty with sleep, feelings of guilt, times of anhedonia,[3] difficulty with concentration, and auditory hallucinations." *Id.* "The Medical Board further noted the cyclical nature and increasing severity of [] Ganiszewski's bipolar disorder observing that over the last two years he has experienced various episodes of 'hypomania, with periods of racing thoughts, little need of sleep, feelings of grandiosity, and indiscretion.'" *Id.* As part of the Medical Board evaluation process, "Ganiszewski's commander filled out the required

---

[2] In evaluating the merits of a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

[3] Anhedonia "is the inability to feel pleasure" and is a "common symptom of depression as well as other mental health disorders." Barbara Brody, What is Anhedonia?, WebMD (Nov. 9, 2022), https://www.webmd.com/depression/what-is-anhedonia (last visited Aug. 27, 2024).

non-medical assessment and indicated that [] Ganiszewski's bipolar disorder severely limited his productivity and effectiveness." *Id.*

Ganiszewski's case was next reviewed by an "Informal Physical Evaluation Board" ("PEB") on June 5, 2007. *Id.* The PEB concluded that Plaintiff's Bipolar Disorder "rendered him 'unfit for military duty as [Ganiszewski] has a condition that causes him to be a *serious liability* with a *high risk for destructive behavior* that could be damaging to himself or those around him . . . ." *Id.* (emphasis in ECF 1). The PEB further determined that "Ganiszewski's' "psychiatric condition manifests itself with *moderate interference* with social and civilian adaptability.'" *Id.* (emphasis in ECF 1). The PEB assigned Ganiszewski a "10 percent disability rating pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9432." *Id.* at 14. Ganiszewski alleges that "[n]o explanation was given for why a 10 percent rating was selected." *Id.* He was honorably discharged "for unfitting Bipolar II Disorder with just a 10% disability rating" on October 9, 2007. *Id.* at 3.

Prior to his discharge, Ganiszewski also "underwent a [Department of Veteran's Affairs ("VA")] examination on July 25, 2007, which resulted in a 50 percent disability rating for Bipolar Disorder under 38 C.F.R. § 4.130, Diagnostic Code 9432, effective from discharge." *Id.* at 14. He alleges that "[i]n addition to [his] VA examination, the VA correctly based its 50 percent disability rating on [his] prior service treatment records from March 31, 2000, through April 20, 2007." *Id.* This 50% disability rating was allegedly "due to the 'VA Psychiatric findings of a flat affect, appearing insecure and uneasy, mildly to moderately anxious, along with reported symptoms of restlessness, hyperactivity, angry outbursts, depressive episodes characterized by depressed mood, anhedonia, reduced energy and reduced sleep, that alternated with manic episodes of grandiosity, talkativeness and irritability coupled with reported treatment with medications and outpatient treatment.'" *Id.* at 15.

3

In 2020, Ganiszewski submitted an application to the Physical Disability Board of Review ("PDBR"), "a federal agency established in 2008 'to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001.'" *Id.* at 3 (citing 153 Cong. Rec. 20342). The purpose of the review was the "PEB's decision to award a 10% permanent disability rating for [Ganiszewski's] unfitting Bipolar Disorder." *Id.* at 15. The PDBR upheld the 10% determination. *Id.* On March 7, 2022, "the Secretary of the Navy Council of Review Boards issued its final decision that accepted the recommendations of the PDBR Decision." *Id.* at 19.

On January 10, 2023, Ganiszewski filed suit in the United States District Court for the District of Columbia alleging that the PDBR's decision violated the APA. *See Ganiszewski v. Austin, et al.*, Case No. 23-cv-71-APM (D.D.C. January 10, 2023). After both parties consented to transfer venue to this district, the case was re-filed here. ECF 1. Ganiszewski alleges that "[t]he Secretary's March 7, 2022 decision to adopt the PDBR's recommendation and refuse to change Plaintiff's disability status is subject to judicial review as a final 'agency action' under the APA." *Id.* (citing 5 U.S.C. §§ 551(13), 701, 704). Ganiszewski further alleges that the decision "was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, as it failed to recognize significant record evidence that Plaintiff's injuries merited higher disability ratings in accordance with 10 U.S.C. § 1216a." *Id.* at 20. He also claims that the decision was unlawful because it affirmed the "the flawed decision of the PEB without explaining why the VA's January 2008 Rating Decision and other evidence did not support a higher rating." *Id.* at 20. Ganiszewski alleges that had the PDBR should have "awarded a 50% rating for [his] Bipolar Disorder." *Id.*

Ganiszewski seeks relief including a finding that the PDBR's "recommendation to maintain [his] disability rating of 10% without re-characterization of discharge to be a final agency

4

action within the meaning of 5 U.S.C. § 704," a finding that "the Secretary's decision of March 7, 2022, was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. . . ," and an order commanding that "Plaintiff's military records [] reflect the correct disability rating of at least 30% for his unfitting Bipolar Disorder." *Id.* at 20-21. Ganiszewski also sought "[a]ward interest, costs, and attorneys' fees as prescribed in 28 U.S.C. § 2414(d)," *id.* at 21, but has subsequently represented that he seeks only "costs and fees associated with [his] Complaint, as set forth in 28 U.S.C. § 2412(d)." ECF 29, at 4 n.1.

Defendants seek dismissal of the complaint on two grounds, each attacking the subject matter jurisdiction of this Court. ECF 23, at 3-8. First, Defendants allege that because Ganiszewski seeks "monetary damages over $10,000," exclusive jurisdiction for his claim lies in the Court of Federal Claims. *Id.* at 4 (citing 28 U.S.C. § 1491(a)(1)). Second, Defendants argue that this Court lacks jurisdiction to adjudicate a challenge to a decision made in 2007 because "[u]nder either the APA or the Tucker Act, Plaintiff's cause of action expired six years from 2007, in 2013." *Id.* at 6. Plaintiff counters the first argument by alleging that he seeks only equitable relief – specifically a correction to his disability rating and related findings, not monetary damages – thus making jurisdiction proper in this Court. ECF 29, at 5. As to the argument that his claim is time-barred, Ganiszewski notes that the decision he challenges is the PDBR's March 7, 2022 decision, which he alleges is well within the APA's six-year statute of limitations. *Id.* at 11. To find otherwise, he asserts, would "improperly immunize PDBR decisions from judicial review." *Id.* at 12. Because it finds the issue dispositive, the Court will address only the first of these arguments, namely that the case belongs in the Court of Federal Claims.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction

are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)). "On a Rule 12(b)(1) motion, a district court may properly consider . . . 'evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 200 (4th Cir. 2022) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768).

As this Court has noted:

> A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis [v. Thompson]*, 367 F.Supp.2d [792, 799 (D. Md. 2005)]. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018).

*Akers v. Maryland State Educ. Ass'n*, 376 F. Supp. 3d 563, 569 (D. Md. 2019). Ganiszewski bears the burden of proving that this Court has subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Given the nature of Plaintiff's complaint, some background into disability ratings and the United States Navy may also be helpful. As described in the complaint, upon a determination by

6

the Secretary of the Navy that a service member "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a). Among a series of other requirements, including that the "disability must be of a permanent nature," *id.* at § 1201(b)(1), it must also be "at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination." *Id.* § 1201(b)(3)(B).

"The Department of the Navy Disability Evaluation Manual contained in [Secretary of the Navy Instruction (hereinafter SECNAVINST)] 1850.4E governed the disability process for members of the [Navy]" at the time of Plaintiff's discharge. *Fuentes v. United States*, 157 Fed. Cl. 433, 436 (2021) (citing SECNAVINST 1850.4E (2002)).[4] "[T]he disability evaluation process begins with a Medical Evaluation Board (MEB), which must find that the Service member's fitness for continued service in the [Navy] is 'questionable by reason of physical or mental impairment.'" *Id.* (citing SECNAVINST 1850.4E, § 3201(a)); *see also Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010) ("A claim for disability is first considered by a [MEB], which reviews the individual's medical records to determine the nature of the disability."). The MEB "is comprised of physicians and is convened to 'evaluate and report on the diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or convalescence; estimate of the length of further

---

[4]   SECNAVINST 1840.4E, Dep't of the Navy (effective Apr. 30, 2002), https://www.secnav.navy.mil/mra/CORB/Documents/SECNAVINST-1850-4E.PDF. SECNAVINST 1850.4F replaced 1840.4E when it was issued on June 27, 2019. *See* SECNAVINST 1850.4F, Dep't of the Navy (effective June 27, 2019), https://www.secnav.navy.mil/doni/Directives/01000%20Military%20Personnel%20Support/01-800%20Millitary%20Retirement%20Services%20and%20Support/1850.4F.pdf.

disability; and medical recommendation for disposition of such members.'" *Fuentes*, 157 Fed. Cl. at 437 (citing SECNAVINST 1850.4E, § 2043).

As the court in *Fuentes* summarized, the MEB is described on the website of the Military Health System (MHS) as an "an informal board because, by itself, it does not drive any personnel actions." *Id.* (citing Medical Evaluation Board, Health.mil, https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Accessto-Healthcare/DoD-VA-Sharing-Initiatives/Disability-Evaluation/Medical-Evaluation (last visited Dec. 20, 2021)).[5] "The findings of the MEB are referred to the Physical Evaluation Board (PEB), which formally determines fitness for continued service and eligibility for disability compensation." *Id.* "The MEB is convened once the medical retention decision point is reached or when the Service member's physician thinks the Service member will not be able to return to duty for medical reasons." *Id.* "The [MEB] evaluates a Service member's medical history and condition, documents the extent of the injury or illness, and decides whether the Service member's medical condition is severe enough to impede his/her ability to continue serving in a full duty capacity." *Id.*

"Then, if the disability is found to be permanent, the issue of disability retirement is referred to a Physical Evaluation Board ("PEB"), which provides a formal fitness and disability determination." *Barnick,* 591 F 3d. at 1375. Importantly, the PEB "process is designed to identify individuals who should be separated or retired for disability because of a permanent disabling medical condition—not to identify those individuals requiring further treatment for a temporarily disabling condition." *Walls v. United States,* 582 F.3d 1358, 1365 (Fed. Cir. 2009). "The 'sole

---

[5] It appears that the MHS website addressing the MEB and its role in the evaluation of a service member's disability has moved from the location cited in *Fuentes*. The new cite is Medical Evaluation Board, MHS, https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/DES/Medical-Evaluation (last visited Aug. 27, 2024).

standard' the PEB uses 'in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay.'" *Fuentes*, 157 Fed. Cl. at 437 (citing SECNAVINST 1850.4E, § 3301). "Upon a finding of unfitness, the PEB may separate or retire the Service member depending on the Service member's disability rating." *Id.* "If the PEB finds that the servicemember is permanently disabled, it will assign the servicemember a disability rating, which, if greater than 30%, makes the servicemember eligible for disability retirement." *Williams v. Roth*, No. 8:21-CV-02135-PX, 2022 WL 4134316, at *1 (D. Md. Sept. 12, 2022). "If the rating is less than 30%, the PEB can recommend discharge with the service member[] having the option to receive a lump-sum disability severance payment." *Barnick*, 591 F.3d at 1375; *see also* SECNAVINST 1850.4E, § 3627 (b) ("If the disability is ratable at less than 30 percent but continues to render the member Unfit to continue naval service, and if the member has served at least six months, but less than 20 years of active duty . . . , he or she will be discharged with severance pay computed in accordance with 10 U.S.C. 1212.").

In sum, "[a] medically retired [service member] receives monthly disability payments for life." *Keltner v. United States*, 165 Fed. Cl. 484, 490–91 (2023) (citing 10 U.S.C. § 1401). "Conversely, service members are 'separated' with a lump-sum payment when the service member has fewer than twenty years of service and the disability is less than thirty percent." *Id.* (citing 10 U.S.C. § 1203(b)). As the *Keltner* Court explained:

> Thus, if a service member has less than twenty years of service, his or her disability rating determines the nature of the payment. *Schmidt v. Spencer*, 319 F. Supp. 3d 386, 389 n.1 (D.D.C. 2018), aff'd sub nom. *Schmidt v. McPherson*, 806 F. App'x 10 (D.C. Cir. 2020). **Thirty percent is the "magic number."** Paul Jennings, The Battle After War: Why Disabled Texas Veterans Are Fighting for the Military Retirement They Deserve, 17 Tex. Tech. Admin. L.J. 153, 163 (2015). To reiterate, a rating of less than thirty percent will result in a "medically separated" designation leading to a one-time lump sum disability severance payment. *See* 10 U.S.C. §§ 1203, 1212. A rating of at least thirty percent will

9

result in a disability retirement with monthly payments for life. *See* 10 U.S.C. § 1201(a)–(b); 10 U.S.C. § 1401 ("Computation of retired pay").

*Keltner*, 165 Fed. Cl. at 491 (emphasis added).

In 2008, Congress "mandated retroactive consideration of disability determinations for members of the armed forces who were separated due to a medical condition with a disability rating of twenty percent [20%] or less between September 11, 2001 and December 31, 2009." *See Coleman v. Wilson*, No. 517CV00096RJCDSC, 2021 WL 3193222, at *1 (W.D.N.C. Apr. 16, 2021), report and recommendation adopted, No. 517CV00096RJCDSC, 2022 WL 966857 (W.D.N.C. Mar. 30, 2022), aff'd sub nom. *Coleman v. Kendall*, 74 F.4th 610 (4th Cir. 2023) (citing 10 U.S.C. § 1554). This created the Physical Disability Board of Review ("PDBR"), whose decision as it relates to Plaintiff is the putative subject of this action. *Id.* "Once a [PDBR] review is complete, the PDBR forwards a recommendation to the secretary of the respective branch of the armed services." Physical Disability Board of Review, MHS, https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/DES/Physical-Disability-Board-of-Review (last visited Aug. 27, 2024). "It is up to the individual service branch to make the final determination on whether to change the original disability determination." *Id.*

## III.   ANALYSIS

The APA waives the sovereign immunity of the United States only for "[a]n action in a court of the United States seeking relief other than money damages." *James v. Caldera,* 159 F.3d 573, 578 (Fed. Cir. 1998) (citing 5 U.S.C. § 702). "In an action for 'money damages,' a plaintiff must seek a waiver of sovereign immunity elsewhere, such as in the Tucker Act." *Id.* (citing *National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997)). Judicial review under the APA is only available "if there is no other adequate remedy in a court." *Id.* (citing 5 U.S.C. § 704). "In other words, 'if a Tucker Act suit in the Court of Federal Claims

provides an adequate remedy, APA review in the district court is not available.'" *Id.* (citing *National Ctr. for Mfg. Sciences*, 114 F.3d at 199).

Defendants argue that the complaint should be dismissed because it belongs in the Court of Federal Claims pursuant to the Tucker Act. *See* ECF 23, at 3-6. "The Tucker Act actually consists of two parts: 28 U.S.C. § 1491, and 28 U.S.C. § 1346(a)(2), which is commonly known as the 'Little Tucker Act.'" *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996). "The Tucker Act grants jurisdiction to the United States Court of Federal Claims 'to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort.'" *Id.* (citing 28 U.S.C. § 1491). "The Little Tucker Act makes the jurisdiction of the Court of Federal Claims concurrent with the district court for civil actions or claims against the United States for $10,000 or less." *Id.* (citing 28 U.S.C. § 1346(a)(2)). "If a plaintiff's claim is for more than $10,000, he must bring the action in the Court of Federal Claims." *Id.* In contrast, and with limited exceptions, "the Court of [Federal] Claims has no power to grant equitable relief." *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (per curiam).

"To determine whether a plaintiff seeks primarily injunctive relief such that a district court has jurisdiction over his claim, courts must look to the 'essence' of the complaint and whether the relief requested is 'not . . . an incident of, or collateral to, a monetary award.'" *Randall*, 95 F. 3d at 347. Defendants argue that Ganiszewski seeks monetary damages in excess of $10,000 because an order of the Court commanding "a 30% or higher disability rating comes with significant monetary benefits" that exceeds that amount. ECF 23, at 4.

This argument is apparently not a new one, as the recent Fourth Circuit case of *Coleman v. Kendall* illustrates. 74 F.4th at 610. There, as here, a disabled veteran filed suit appealing "from

11

a decision of the [PDBR] declining to increase his disability rating, which would entitle him to greater benefits." *Id.* at 612. Also as here, a key issue in the case was whether the plaintiff's "complaint seeks injunctive relief, monetary relief up to $10,000, or monetary relief exceeding $10,000." *Id.* at 615. The issue was first addressed by a United States Magistrate Judge, who initially concluded, as the district judge who later upheld the Magistrate Judge's decision did, that "[i]t is obvious that [the *Coleman* plaintiff's] Complaint seeks monetary relief." *Coleman v. Wilson*, No. 517CV00096RJCDSC, 2018 WL 1586705, at *3 (W.D.N.C. Apr. 1, 2018). "Plaintiff," both judges concluded, "cannot hide monetary claims under the guise of injunctive relief to gain access to the district court." *Id.* An appeal to the Court of Appeals for the Fourth Circuit followed.

While that appeal was pending, the *Coleman* plaintiff "filed a Declaration 'waiving any right to military retirement pay.'" *Coleman*, 2021 WL 3193222, at *2. Upon receiving this declaration, the Court of Appeals remanded the case to the trial court to reconsider its earlier decision regarding subject matter jurisdiction in light of the plaintiff's concession that he was not seeking retirement pay. *Id.*

On remand, the trial court, again through the decision of a magistrate judge that was ultimately affirmed by the district judge, reversed its earlier decision and held that the declaration eschewing retirement pay sufficiently confirmed that "the essence" of the claim was "for injunctive relief to alter or amend [the plaintiff's] military records." *Id.* at *4. Since the plaintiff was no longer seeking retirement pay, the magistrate judge concluded that the complaint "does not exclusively seek monetary relief that falls within the jurisdiction of the U.S. Court of Federal Claims." *Id.* This finding was not disturbed by the fact that even considering the declaration disavowing retirement pay, if the plaintiff succeeded he would still be eligible to receive multiple

additional benefits that might have monetary value including participation in the "'Tricare' military health insurance system," stays at "campgrounds and other military destinations," "travel privileges aboard military aircrafts," the right to "wear his military uniform in public," and "burial privileges in national cemeteries." *Id.* (citing *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006)).

In affirming the magistrate judge's conclusion, the district judge recognized that "[i]n analogous jurisdictional issues, . . . district courts may exercise jurisdiction under the Little Tucker Act when plaintiffs waive their right to monetary relief over $10,000." *Coleman v. Wilson*, No. 517CV00096RJCDSC, 2022 WL 966857, at *4 (W.D.N.C. Mar. 30, 2022). "Similarly," the district judge observed, "district courts exercise jurisdiction over claims against the United States under the APA where plaintiffs dismiss causes of actions that would otherwise prevent the district courts from exercising jurisdiction." *Id.* (citing *Bennett v. Murphy*, 166 F. Supp. 3d 128, 131 (D. Mass 2016)). "[A]fter waiving any right to military retirement pay," the district judge agreed that "the essence of the relief [the *Coleman*] [p]laintiff seeks is equitable relief to alter or amend his military records for purposes other than backpay or retirement pay." *Id.* at *5.

On a second appeal, the Fourth Circuit, *sua sponte*, affirmed this finding of subject matter jurisdiction. *Coleman*, 74 F.4th at 616. "Based on [the *Coleman* plaintiff]'s waiver [of military retirement pay]," the Fourth Circuit held that "the district court properly concluded that it had jurisdiction over [the plaintiff's] claims." *Id.* However, the Fourth Circuit expressly held that it did "not reach the question of whether, absent [the plaintiff's] waiver, the essence of his claim seeks injunctive relief." *Id.* Regardless, it must be noted that the appellate court observed that "[a]lthough [the *Coleman* plaintiff] did not specifically request monetary relief, [his] complaint noted that the [PDBR's] 'refusal to recognize the extent of [his] service-connected disability . . .

13

depriv[ed] him of military *disability retirement pay* and other benefits.'" *Id.* (emphasis in original). The clear implication of this emphasis is, as the lower *Coleman* court observed initially, had the plaintiff's suit continued to seek the recovery of disability retirement pay, the trial court may have had good reason to conclude that the complaint sought more than injunctive relief.

Here, both parties point to *Coleman* as supporting their respective positions. ECF 23, at 4-5; ECF 29, at 8. Of note is Plaintiff's argument that *Coleman* is inapposite because unlike *Coleman*, Ganiszewski does not explicitly seek "retirement pay" in his complaint. ECF 29, at 8. Even if he had, Plaintiff avers, "it would be immaterial, because the law requires that 'a military retiree waive a portion of their gross [Department of Defense (DoD)] retired pay, dollar for dollar, by the amount of their [VA] disability compensation pay; this is known as the VA waiver (or VA offset)." *Id.* (citing *Regis v. McDonough*, Civ. No. 23-0887, 2023 WL 4704097, at *3 (Vet. App. July 24, 2023)).

As to his first point, Ganiszewski is correct that his complaint does not explicitly use the words "retirement pay." However, the Court's analysis "does not end with the words of the complaint, however instructive they may be, for [it] still must 'look to the true nature of the action in determining the existence or not of jurisdiction.'" *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998) (citing *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)). "In determining whether a complaint seeks monetary relief, "the court must generally limit [its inquiry] to the four corners of the complaint." *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) (citing *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006)). An "inquir[y] into the consequences of [the] plaintiff[']s] victor[y]—even 'automatic' consequences—would 'take [the court] outside the record sought to be reviewed and thereby complicate the jurisdictional issue.'" *Id.* (citing *Kidwell v. Dep't of the Army, Bd. For Corr. Of Military Records,* 56 F.3d 279, 285 (D.C. Cir. 1995)). It must

also be noted that "[t]he fact that in seeking the correction of a military record the plaintiff may, if successful, obtain monetary relief from the United States in subsequent administrative proceedings is insufficient to deprive the district court of jurisdiction." *Id.* (citations to *Tootle* and *Kidwell* omitted).

Here, Ganiszewski's complaint specifically asking the Cour to "[o]rder the Secretary to correct Plaintiff's military records **to reflect the correct disability rating of at least 30%** for his unfitting Bipolar Disorder." ECF 1, at 21 (emphasis added). Thus, while the complaint does not seek a specific award of "retirement pay," it does ask the Court to directly order the Secretary to rate Plaintiff at "the correct disability rating of at least 30%," *id.*, the precise amount needed to unlock retirement pay. *Keltner,* 165 Fed. Cl. at 491. Indeed, Plaintiff appears to seek instatement of a specific 50% permanent disability rating, not merely a re-rating. ECF 1, at 17 ("The PDBR should have applied the VA's July 25, 2007, examination and January 27, 2008 Rating Decision establishing a 50% disability rating for Bipolar Disorder). Thus, the essence of Ganiszewski's demand is not for a reconsideration of a prior decision, but one for a specific ruling that both sides appear to concede will compel the payment of monetary damages.

This was a distinction made by Judge Xinis in *Williams v. Roth*, a case cited by Defendants in support of their argument that "where the Plaintiff merely asks the court to remand the matter to the military for reconsideration, such a case is not one for monetary damages." ECF 23, at 5 (citing No. 21-cv-2135 (PX), 2022 WL 4134316 (D. Md. Sept. 12, 2022)). There, plaintiff Amber Williams served honorably in the Air Force before her mental health began to deteriorate and "her career began to suffer." *Id.* at *2. After investigating her health, the Air Force concluded that her disability was "'Personality Disorder, Not Otherwise Specified, with marked Narcissistic and Histrionic traits' that impaired 'multiple areas of [her] functioning.'" *Id.* The Air Force

determined that this was an "'unsuiting' condition, meaning that [Williams] would not be referred to the [Disability Evaluation System (DES)]" and therefore would not be eligible for "considered for retirement benefits and may face discharge proceedings." *Id.* at \*2.  The Air Force ultimately discharged Williams due to her condition. *Id.* at \*3.

After receiving additional mental health care and a new diagnosis, Williams filed an application with the relevant Air Force review board, the Air Force Board for Correction of Military Records ("AFBCMR") "requesting that her discharge reflect a separation for medical disability due to Bipolar Disorder, PTSD, and Anxiety Disorder." *Id.* Her request was denied. *Id.* She later asked the Air Force to "void her discharge and involuntary separation, reinstate her to active duty, and refer her to the DES for processing." *Id.* at \*4.  Though the Air Force updated the name of Williams' disability, it denied all other requested relief. *Id.* Williams filed suit under the APA "maintaining that the final decision must be set aside as arbitrary and capricious, unsupported by substantial evidence, and contrary to law." *Id.* "As relief," Williams asked the court to "remand the matter to the AFBCMR with direction to consider her stated arguments for relief and the new evidence submitted." *Id.*

Like the instant case, the Secretary of the Air Force sought dismissal of the complaint on the ground that Williams "essentially s[ought] 'monetary relief'" which, pursuant to the Tucker Act, could only proceed before the Court of Federal Claims. *Id.* Judge Xinis concluded that Williams' complaint "plainly is one seeking injunctive, not monetary, relief" because "Williams asks only that the Court set aside the final decision as arbitrary and capricious, and accordingly '[r]emand the matter to the AFBCMR' for further consideration of her arguments and new evidence." *Id.* (citing the Complaint in *Williams*). "In this critical respect," Judge Xinis observed, "Williams seeks the heartland of equitable relief available under the APA, not money damages."

16

*Id.* (citations omitted).  As to the argument raised by the Air Force that Williams merely sought an order that would unlock retirement pay, Judge Xinis noted that such an outcome could not be guaranteed by if Williams' suit was successful:

> The Secretary's reasoning is that if Williams convinces the AFBCMR on remand to change the stated ground for discharge, then she "*could* be entitled to military retirement and full benefits." . . . But the mere possibility that such relief *may* be available down the line does not transform this Complaint into one for money damages.  Indeed, "[a] suit which does not seek monetary damages does not arise under the Tucker Act simply because the plaintiff's success will result in eventual monetary gain from the government." . . . . If this Court were to conclude otherwise, then any request for review of an agency decision would be thwarted if, in the future, a new agency determination could possibly lead to monetary relief.  This potentiality is simply too speculative to credit.

*Id.* at \*5 (citations omitted) (emphasis in original).

A similar conclusion was reached by the district court in *Harrison v. Kendall*, where the plaintiff initially sought "declaratory and injunctive relief and request[ed] that the Court 'set aside [a] AFBCMR's . . . decision, direct the [Secretary of the Air Force] to change [the plaintiff's] medical retirement rating to 100% medical retirement retroactive to 1978, or [to] remand [the plaintiff's] application with an order to re-evaluate his application under the correct standards and considering all record evidence." 670 F. Supp. 3d 280, 295 (E.D. Va. 2023).  As in *Williams*, the Secretary of the Air Force argued that the plaintiff's claim was, "in substance," for monetary relief and fell "within the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act . . . ." *Id.* "At oral argument," however, the Secretary of the Air Force "clarified that it contests jurisdiction only to the extent that [the plaintiff] request[ed a] correcti[on to] his disability retirement rating to 100% retroactive to 1978 and does not contest jurisdiction to the extent that the remedy sought is a remand to the AFBCMR." *Id.* After the Court noted that "it lack[ed] the authority to grant [the plaintiff's] request to change his military record," the plaintiff agreed to

"drop that form of relief from [his] Complaint and agreed that remand is the appropriate remedy should he prevail on the merits." *Id.*

Reduced to a mere request for remand and reconsideration of his disability determination by the Air Force, the *Harrison* Court found that jurisdiction was proper in district court under the APA. *Id.* at 296. "Even though, on remand, a finding by the AFBCMR in [the plaintiff's] favor to include a diagnosis of PTSD in his records and increase his disability rating may result in the payment of retroactive retirement benefits to him, such 'eventual monetary gain' does not convert his claim into a Tucker Act claim for money damages." *Id.* (citations omitted). This, the district judge reflected, was because "[t]he issue before the Court is the propriety of the AFBCMR's decision-making process, and judgment in [the plaintiff's] favor should he prevail would not automatically result in monetary relief; instead, any monetary recovery would come after subsequent review by the AFBCMR of his application, the AFBCMR's determination of his proper disability rating, and the Air Force's retirement benefits process." *Id.* at 297-98.

In contrast to the scenarios presented in *Williams* and *Harrison*, Ganiszewski does not simply seek a return of his case to the appropriate agency for reconsideration. Instead, he asks this Court to remand his case *and* to order the Navy to change his disability rating to at least thirty percent (30%), ECF 1, at 21, the precise "magic number" that will result in a disability retirement with monthly payments for life. *Keltner*, 165 Fed. Cl. at 491. Notwithstanding the fact that "[o]rdering a specific remedy or outcome on remand as to [the] appropriate disability rating is inconsistent with the Court's role in reviewing final agency action under the APA, in which it 'sits as an appellate tribunal,'" *Harrison*, 670 F. Supp. 3d. at 297 (quoting *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)), Ganiszewski's detailed request for remand with explicit conditions reveals that the essence of his claim is for money damages in the form of

retirement pay. At best, ordering a particular rating likely falls beyond the Court's authority. *See Huffman v. Kelly*, 239 F. Supp. 3d 144, 156 (D.D.C. 2017), aff'd sub nom. *Huffman v. Nielsen*, 732 F. App'x 1 (D.C. Cir. 2018) ("The Court agrees that its authority is limited to determining whether the [Coast Guard Board for Correction of Military Records] decisions violated the APA, and, if so, the relief the Court may award is limited to remanding the Board's decision to the Board."). More to the point, it proves that jurisdiction here is improper because "[Federal] Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms." *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983).[6]

It also cannot be ignored that Plaintiff had the benefit of reviewing *Coleman*, *Harrison*, and *Williams* and still chose not to modify his demand to clarify that the relief he seeks is purely equitable. Indeed, despite the roadmap provided in *Coleman*, Plaintiff opted not to file an affidavit, or formally seek leave to amend his complaint, to clarify that he does not seek retirement pay. Nor did Plaintiff seek to clarify that he only seeks a fresh review by the relevant board, which may be cognizable under the APA. *See Harrison*, 670 F. Supp. 3d at 297–98 ("The issue before the Court

---

[6] Plaintiff raises no argument that the value of retirement pay might fall below $10,000, thus permitting concurrent jurisdiction between the Court of Federal Claims and this Court. *See* 28 U.S.C. § 1491 (vesting exclusive jurisdiction in the Court of Federal Claims over claims against the United States for "liquidated or unliquidated damages in cases not sounding in tort."); *but see* 28 U.S.C. § 1346(a)(2) (providing for concurrent jurisdiction for "civil action[s] or claim[s] against the United States, not exceeding $10,000 in amount"). Nor could he. Plaintiff's separation from the service occurred in 2008, over a decade ago, meaning a change in disability rating to the requested percentage would yield a significant award. *See Palacios v. Spencer, 267 F. Supp. 3d 1, 5 (D.D.C. 2017)* ("But given that Palacios left service over 20 years ago, it is implausible that, if he obtained an upgraded discharge status, he would be entitled to $10,000 or less."). And beyond arguing that an offset of VA disability payments may reduce any retirement pay, *see infra*, Plaintiff raises no challenge to Defendant's claim that retirement pay would exceed $10,000. *Id.* ("Indeed, while Palacios disputes that his claim falls within the Tucker Act, he does not argue that the 'back pay and benefits' he seeks fall below its $10,000 threshold."). As such, the Court is satisfied that the retirement pay would exceed $10,000 and thus will not address concurrent jurisdiction further.

is the propriety of the AFBCMR's decision-making process, and judgment in Harrison's favor should he prevail would not automatically result in monetary relief; instead, any monetary recovery would come after subsequent review by the AFBCMR of his application, the AFBCMR's determination of his proper disability rating, and the Air Force's retirement benefits process."). Moreover, the Court need not go beyond the four corners of the complaint to determine the consequences of an order of the kind sought by Plaintiff as both sides appear to concede that the immediate result would be a sizeable award of retirement pay.[7] *Smalls*, 471 F.3d at 190.

To be clear, Plaintiff pledges that his primary consideration is a review of the "PDBR's decision-making process." ECF 29, at 6. As a sister court noted, "that may be true[;] [b]ut a plaintiff who requests monetary damages cannot avoid the Tucker Act by saying that he *cares* more about non-monetary relief." *Palacios v. Spencer*, 267 F. Supp. 3d 1, 6 (D.D.C. 2017), aff'd in part, appeal dismissed in part, 906 F.3d 124 (D.C. Cir. 2018) (emphasis in original). Having found that Plaintiff essentially seeks money damages in his complaint, the Court finds Plaintiff's subsequent representation fails to change this conclusion and falls short of the sworn declaration disavowing money relief filed in *Coleman*.

Plaintiff also argues that even if the Court were to construe his complaint as one seeking retirement pay, "it would be immaterial, because the law requires that 'a military retiree waive a portion of their gross [Department of Defense (DoD)] retired pay, dollar for dollar, by the amount of their [VA] disability compensation pay; this is known as the VA waiver (or VA offset).'" ECF

---

[7] Plaintiff does offer that "[i]f the Court interprets [his] request for relief as essentially seeking monetary damages, . . . [he] would be willing to drop this request and respectfully request[ed] leave to amend in the event the Court grants Defendants' motion." ECF 29, at 5 n2. However, the Court cannot provide advisory opinions, *see North Carolina v. Rice*, 404 U.S. 244, 246 (1971), and a request in a footnote does not comport with the requirements for seeking leave to file an amended complaint as delineated in Fed. R. Civ. P. 15(a)(2) and Loc. R. 103.6(c) (D. Md. 2023).

29, at 8 (citing *Regis v. McDonough*, Civ. No. 23-0887, 2023 WL 4704097, at *3 (Vet. App. July 24, 2023)). It is true that "38 U.S.C. § 5304 prohibits the duplication of disability benefits and retirement pay, and a military retiree is ordinarily required to waive a portion of their retired pay equal to the amount of their VA disability compensation pay under 38 U.S.C. § 5305." *Harrison*, 670 F. Supp. 3d at 298 n.2. "However, statutory programs also exist that permit eligible service members to recover some of the waived retired pay," *id.*, so there is no guarantee that an award of retirement pay would be entirely cancelled out by Plaintiff's receipt of VA benefits. More importantly, this Court agrees with the observation made in *Harrison* that "it is not this Court's role to speculate beyond the administrative record as to what will happen to [Ganiszewski's] claim for retirement benefits" in the event his suit is successful. *Id.* As such, the Court cannot conclude with the required certainty that any potential retirement pay will be reduced by the amount of VA benefits or, if so, how much it might be reduced.[8]

Finally, Plaintiff alleges that jurisdiction is proper here as there are no other remedies available to him and further claims that Defendants "motion to dismiss seeks to improperly

---

[8] The Court agrees that, in general, "veteran[s] cannot receive the full amount of [retirement pay and VA disability]." *Hutchinson v. United States*, 168 Fed. Cl. 504, 511 (2023) (cited at ECF 30, at 3). However, "[a] veteran may elect to waive the portion of retired pay that would be duplicative of disability benefits and, thereby, become entitled to receive the disability benefits in addition to the unwaived portion of retired pay." *Id.* (citing *Burkins v. United States*, 112 F.3d 444, 447 (10th Cir. 1997)); *see also Porter v. United States*, 131 Fed. Cl. 552, 561 (2017) ("[U]nder 38 U.S.C. § 5304 and 38 C.F.R. § 3.750, a veteran who is eligible for both military retirement pay and disability compensation must generally waive his military retired pay in order to receive disability compensation."). It is unclear from the face of the complaint the amount of VA disability payment plaintiff has received and how much would be duplicative of Plaintiff's retirement pay. *See* ECF 1, at 14-15 (noting only that Ganiszewski received "vocational rehabilitation benefits" and assigned him a "50% disability rating" but omitting any specifics of VA payment amounts). Thus, even if the Court were to entertain the argument that the VA offset would eliminate retirement pay, Plaintiff has failed to meet his burden of establishing that jurisdiction is proper in this court. *See Richmond, Fredericksburg & Potomac R.R. Co*, 945 F.2d at 768.

immunize PDBR decisions from judicial review." ECF 29, at 9-14. Even if both claims are true, this cannot change the fact that the APA waives sovereign immunity only for suits seeking relief "other than money damages." *Randall*, 95 F.3d at 346. Moreover, Plaintiff's response appears to concede that remedies are unavailable to him because he failed to pursue them in a timely manner, not because they did not exist. ECF 29, at 9 (stating that "Ganiszewski's right to file a Tucker Act suit for money damages expired on October 7, 2013."). However, "[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy." *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998). Even if Plaintiff's assertions are correct as to the remedies remaining if this suit cannot be maintained, it simply does not change the fact that jurisdiction for Plaintiff's claim, as pleaded, lies in a different court.

Given the Court's ruling on jurisdiction, it need not decide the question of whether Plaintiff's claim is otherwise time-barred. The Court expresses no position on the merits of that argument.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, ECF 23, is **GRANTED** and Plaintiff's complaint is **DISMISSED** without prejudice.

A separate implementing Order will issue.

Dated: <u>September 17, 2024</u>                                        <u>        /s/        </u>
                                                                       Brendan A. Hurson
                                                                       United States District Judge